

# THE ATTORNEY GENERAL
# OF TEXAS

### AUSTIN, TEXAS 78711

**JOHN L. HILL**
ATTORNEY GENERAL

July 27, 1973

Mr. Ivan Williams, Executive Director
Texas Amusement Machine Commission
1411 West Avenue, Richmond Building
Suite 200
Austin, Texas    78711

Opinion No. H- 73

Re: The meaning of Article 13.17,
Taxation-General, V.A.T.C.S.,
governing taxation of coin-
operated machines in light of
Thompson v. Calvert, 489 SW2d
95 (Tex. Sup. 1972)

Dear Mr. Williams:

Article 13.17, Title 122A, Taxation-General, Vernon's
Annotated Civil Statutes (1969), is a comprehensive regula-
tion of certain coin-operated machines and in part is directed
at preventing persons in businesses dealing in those machines
from having concurrent financial interests in certain alco-
holic beverage businesses. Section 8(1) of Article 13.17
provides:

> "No person shall engage in business to
> manufacture, own, buy, sell, or rent,
> lease, trade, lend, or furnish to an-
> other, or repair, maintain, service,
> transport within the state, store, or
> import, a music coin-operated machine
> or a skill or pleasure coin-operated
> machine without a license issued un-
> der this article."

Section 27(1) of the same article in part provides:

> "It shall be unlawful for a person who
> has a financial interest in a business
> required to be licensed by this Arti-
> cle to knowingly have a financial in-
> terest in a business engaged in sell-
> ing or serving alcoholic beverages for
> on-premises consumption . . . . "

In Thompson v. Calvert, 489 SW2d, 95 (Tex. Sup. 1972), the Supreme Court held that Article 13.17 did not apply to:

> "[I]ndividual petitioners and others simi-
> larly situated whose distinctive business,
> occupation, and employment is that of
> selling and serving alcoholic beverages
> for on-premises consumption, and who
> only own coin-operated machines for use
> and display on their own premises and on-
> ly as an adjunct or incidental thereto."
> Id. at 98.

You have asked three questions:

> (1) What are the criteria, if any, for deter-
> mining whether the ownership and use of "coin-
> operated machines" are "purely incidental" to
> the business of selling or serving alcoholic
> beverages for on-premises consumption?

> (2) If there are criteria for determining
> whether the ownership and use of "coin-
> operated machines" are "purely incidental"
> to the business of selling or serving al-
> coholic beverages for on-premises consump-
> tion, may these criteria be employed by
> the Commission to limit the total number
> of "coin-operated machines" an owner of a
> permit to engage in selling or serving al-
> coholic beverages for on-premises consump-
> tion may own and use at a place of business
> owned by him?

> (3) If a limitation may be imposed on the
> total number of "coin-operated machines"
> an owner of a permit to engage in selling
> or serving alcoholic beverages for on-
> premises consumption may own and use at
> his place of business as "purely inciden-
> tal" to his business, how may such a limi-
> tation be enforced by the Commission?

Your questions concern the intended scope of the prohibi-
tion of the concurrent financial relationship described in Sec-
tion 27(1). Specifically, the questions deal with its applica-
tion to owners of permits from the Alcoholic Beverage Commission
to sell or serve alcoholic beverages for on-premises consumption
(hereinafter referred to as "ABC permittees").

It is clear that the Supreme Court has held that mere ownership of coin-operated machines is not sufficient to bring an ABC permittee within the purview of Section 27(1). It is appropriate to note the comments of the Supreme Court regarding the Legislature's intent in passing Article 13.17 and the intended effect of its decision.

Noting that a special committee was created during the 1969 Session which later made a report on which the Coin-Operated Machine Law was based, the Court stated:

> "It is shown in the record that in 1969 the Legislature, in response to a trend of increasing violence and other illegal activities which centered around taverns and night clubs, created a special committee to study the problem. That committee determined that some of those engaged in the coin-operated machine business had gained a great deal of control over and financial interest in certain alcoholic beverage businesses. Article 13.17 was then passed . . . .
>
> "[A]s interpreted, the Act effectively carries out the intent to free the small tavern operator from the hold of the machine industry and make those operators of alcoholic beverage establishments more independent." Thompson v. Calvert, supra, pp. 97, 98.

It is doubtful that the terms "control", "financial interest", and "hold" referred to by the Court are attributable to tavern operators who own a small number of vending machines. On the contrary, the Court said that the Act is directed at the vending "business" as that term is commonly understood.

> "We think that the clear legislative intent of the Act was to regulate those engaged in the business of dealing in coin-operated machines; meaning those who are engaged in manufacturing, owning, buying, selling, renting, leasing, trading, lending, etc., such machines as an occupation or employment. The Act clearly requires a license for those thus engaged in such distinctive business, such as Petitioner, A's Vending, a Texas Corporation [which owned 81 machines according to testimony at trial], which admittedly was engaged in the business of selling coin-operated machines." Id. at 98.

Thus, it would not be appropriate to define the term "incidental" in such a way that such definition would result in many tavern owners being forced to lease machines from the vending industry, although not themselves being engaged in the vending "business" as it is viewed by the Supreme Court in Thompson.

The transcript from the Thompson trial indicates that among the petitioners held not to be covered by Section 27(1) was a Mr. Harrison, who testified that he owned ten machines in a total of three places of business. Additional testimony indicated that petitioner Thompson owned one machine and petitioner Zulaica owned three machines at two places of business. It was suggested by counsel, though not corroborated, that Mr. Flores owned three machines at two places of business. This testimony should be of some value in assessing the meaning of the Court's statement that "Petitioners Thompson, Flores, Zulaica, Harrison, and others similarly situated" were not barred from owning their own machines. Id. at 99.

On the other hand, the decision cannot be read to allow an ABC permittee to own an unlimited number of machines. Beyond some point the ownership of a large quantity of machines could not properly be viewed as incidental to the distinctive business of selling alcoholic beverages for on-premises consumption. The Thompson rationale prevents the use of an alcoholic beverage permit as a subterfuge for engaging in the vending business. The chance of such a clandestine "vending business" being started would presumably be greater in the case of an ABC permittee who owned a large number of vending machines in his only place of business licensed to serve alcoholic beverages on-premises or in the case of an ABC permittee who owned both a large number of businesses so licensed and a large number of machines. Accordingly, the total number of machines owned by an ABC permittee and the number of machines at each place of business are relevant criteria in determining whether Section 27(1) is applicable to such permittee.

If the Commission found that a tavern operator were selling, leasing, renting, buying, and thereby engaging in some activity beyond mere ownership of his machines, a presumption would appropriately exist that he was engaging in the vending "business". This conclusion would seem to be true regardless of the number of machines owned by the individual since the "incidental" limitation was applied only with respect to those who "merely own" their machines.

The establishment of criteria to enforce the Thompson holding is purely an administrative determination that will have to be made within the limits of the court's decision and this opinion. Nevertheless, we consider the following factors relevant to determining whether an ABC permittee

who owns one or more vending machines is engaged in the "business of dealing in coin-operated machines" or whether the ownership of the machine or machines is "purely incidental" to the primary business of serving alcoholic beverages on-premises, thereby exempting that business from Section 27(1): (1) The number of machines in each place of business; the number of places of businesses owned by the ABC permittee; and the total number of machines owned by the ABC permittee at all of his places of business combined; (2) Whether such person is engaging in any transactions concerning his machines beyond mere ownership of them; (3) Some comparison, if possible, of revenues attributable to sales of alcoholic beverages and revenues attributable to coin-operated machines; (4) A comparison of floor space attributable to the sale and consumption of alcoholic beverages with the floor space attributable to the use of coin-operated machines; (5) Whether the tavern containing the amusement machines was open during hours in which it could not legally sell alcoholic beverages; and (6) A comparison of the ABC permittee's capital investment in amusement machines with his total capital investment. We are not in a position to assess the administrative difficulties of establishing and enforcing any set of criteria. Of course, the Commission may use other criteria which it feels are reasonably relevant to applying the rationale of the Thompson decision.

Turning to your second question, it is our opinion that the Commission does have the power to regulate the number of machines an ABC permittee may own and use at his place of business. The purpose of Article 13.17 as expressed in Section 1 thereof is:

> "[T]o provide comprehensive regulation of music and skill or pleasure coin-operated machines and businesses dealing in these machines, and to prevent persons in these businesses from having certain concurrent financial interests in, or unauthorized financial dealings with, certain alcoholic beverage businesses."

Where an agency is obligated by statute to effectuate the express purpose of the act, authority reasonably necessary to carry out that purpose is implied from the statute. Coryelius v. Railroad Commission, 182 SW2d 412 (Tex. Civ. App., Austin 1944, no writ). Texas Liquor Control Board v. Super Savings Stamp Co., 303 SW2d 536 (Tex. Civ. App., San Antonio 1957, writ ref'd n.r.e.). Article 13.17, Section 4 makes this grant of power expressly:

> "In addition to its existing powers,
> the . . . Commission may, for the pur-
> pose of administering this Article,
>
> "(1)  prescribe all necessary regu-
> lations . . . ."

Even if the ABC permittee owns vending machines purely incidentally to his business, in order to determine whether his ownership of machines is proper, the Commission has implied authority to observe his operation and to request reports. Since the Commission is duty-bound to regulate the vending industry, it necessarily has the authority to determine who should be licensed under Article 13.17. The licensing power would be almost meaningless if the Commission did not also have the authority to determine whether a tavern operator's ownership and use of coin-operated machines is incidental to his business in order to implement the Thompson decision. Thus, the regulations envisioned by your second question would be necessary for the implementation of the Thompson decision.

The Commission may not, of course, make regulations which are contrary to or beyond their statutory authorization. All-state Insurance Co. v. State Board of Insurance, 401 SW2d 131 (Tex. Civ. App., Austin 1966, writ ref'd n.r.e.) The regulations promulgated by the Commission must also be sufficiently explicit to inform those bound by them what conduct will constitute a violation. Railroad Commission v. Ft. Worth and D. C. Ry. Co., 161 SW2d 560 (Tex. Civ. App., Austin 1942, writ ref'd w.o.m.). Since a violation of Section 27(1) renders the violator liable to the penal provisions of Section 27(5), the rules promulgated with respect to Section 27(1) must meet the strict standards of definiteness applicable to penal statutes.

> "No one may be required at the peril of
> life, liberty or property to speculate
> as to the meaning of penal statutes.
> All are entitled to be informed as to
> what the State commends or forbids."
> Lanyetta v. New Jersey, 306 U.S. 451,
> 453 (1939).

Lack of specificity will render the rules void as violative of the due process clause of the Fourteenth Amendment of the U. S. Constitution. Connally v. General Construction Co., 269 U. S. 385, 391 (1925).

Your third question asks how the Commission would enforce such a regulation. We noted above that the Commission has the power to require information from tavern owners who own coin-operated machines. The Commission should consider sending notifications of the rules it promulgates to ABC permittees. Through notification, required reports, and "spot checks" the Commission could determine whether any businesses were not complying with Article 13.17. The Commission after such determination could then notify the appropriate district or county attorneys for prosecution under the statute.

Since the businesses that the Thompson decision is concerned with are all permittees of the Alcoholic Beverage Commission, it might be appropriate to solicit the assistance of that agency in some aspects of the enforcement of the Act. Article 13.17, Section 6 provides:

> "All state agencies are directed to cooperate with the . . . Commission in its investigatory functions under this Article, and shall provide it access to their relevant records and reports . . . ."

Article 13.17, Section 3, provides that the Commission may institute civil proceedings through the Attorney General against violators which would include injunctive relief.

## SUMMARY

While the criteria for determining the applicability of Article 13.17, Section 27(1) to owners of permits to sell or serve alcoholic beverages for on-premises consumption may not be determined with exactitude, it would not be appropriate to define the term "incidental" in such a way that would exclude only a very restrictive category of tavern owners from the purview of Section 27(1). Such a restrictive interpretation would not be in keeping with the intent of Article 13.17, as expressed by the Supreme Court, to "free the small tavern owner from the hold of the machine industry" because such an interpretation would result in many tavern owners being forced to lease machines from the vending industry. Nonetheless, it is also inappropriate to conclude that the owners of such permits may own an unlimited number of machines.

The Amusement Machine Commission possesses the authority to promulgate regulations to regulate the number of machines an owner of a permit to sell or serve alcoholic beverages for on-premises consumption may own at his place of business. These rules must not go beyond the Commission's statutory authorization and must be sufficiently explicit to inform those persons affected by them what conduct will constitute a violation. The Commission may determine if any businesses are failing to comply with Article 13.17. After such a determination, appropriate civil and criminal remedies are available to the Commission.

Very truly yours,

JOHN L. HILL
Attorney General of Texas

APPROVED:

LARRY F. YORK, First Assistant

DAVID M. KENDALL, Chairman
Opinion Committee